IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TABITHA REDENBAUGH,<br><br>　　　　　　*Plaintiff,*<br><br>　v.<br><br>UNITED STATES STEEL CLAIRTON<br>WORKS,<br><br>　　　　　　*Defendants.* | Civil Action No. 2:22-cv-01779<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Tabitha Redenbaugh ("Redenbaugh") brought this action against her former employer, Defendant United States Steel Clairton Works ("USS"), alleging it failed to accommodate her disability, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (ECF No. 1). Pending before the Court is USS's Motion for Summary Judgment. (ECF No. 24). For the reasons that follow, the motion will be granted.

### I.　FACTUAL BACKGROUND

Redenbaugh began working for USS at its Clairton Plant (the "Plant")[1] as a chemical analyst ("Chemical Analyst") in November 2002. (ECF No. 26, p. 1; ECF No. 29, p. 6). Her responsibilities included collecting samples at the Plant's mill, working with hazardous chemicals, and carrying objects that weighed up to fifty pounds. She also cleaned glass instruments, entered the hazardous waste shed, moved five-gallon containers, and moved twenty to twenty-five pound

---

[1] USS is an integrated steel manufacturer and has operations outside of Pittsburgh, Pennsylvania. The Plant operates ten coke oven batteries and produces around 4.3 million tons of coke annually. (ECF No. 26, p. 1; ECF No. 29, p. 6).

tar collection buckets.  (ECF No. 26, pp. 3-4; ECF No. 29, pp. 6-7).  She was required to wear metatarsal boots while onsite at the Plant.  However, she was permitted to wear sneakers while working in the laboratory.  (ECF No. 29, p. 1; ECF No. 31, p. 1).   In 2014, USS mandated that workers wear ANSI-certified metatarsal boots because they are the recommended standard for protective footwear to minimize safety risks by the Occupational Safety and Health Administration.  USS also revised its safety procedures for lab employees and required them to wear metatarsal boots while working in the laboratory in addition to onsite at the Plant.[2]  (ECF No. 26, pp. 3-4; ECF No. 29, pp. 6-7).  USS provides employees with footwear from its boot truck that is manufactured by third parties and is ANSI-certified by the manufacturer.  (ECF No. 26, p. 6; ECF No. 29, p. 10).

After 2014, Redenbaugh wore ANSI-certified metatarsal boots that did not fit her properly.  (ECF No. 29, p. 2; ECF No. 31, p. 2).  She went off work in the spring of 2019 due to a foot injury.  While off work, she informed the Plant's laboratory manager that she would be unable to wear the standard metatarsal boots and that she needed wide width boots.  She tried on other metatarsal boots available from USS's boot truck.  For months, USS worked with Redenbaugh and its shoe vendor to identify more than half a dozen options in various sizes and styles and even considered one other option that Redenbaugh suggested based on her own research.  In late October 2019, USS paid for ANSI-certified metatarsal boots that Redenbaugh selected and she returned to work in January 2020.  (ECF No. 26, pp. 4-5; ECF No. 29, pp. 2, 8; ECF No. 31, p. 2).

Over time, Redenbaugh discovered that the new boots did not fit her properly.  She went off work in August 2020 and had surgery on her feet.  Prior to being released to return to work in

---

[2] The job description for Chemical Analyst lists "metatarsal boots" as required personal protective equipment.  (ECF No. 26, p. 3; ECF No. 29, p. 6).

March 2021, Redenbaugh contacted USS's safety department to request custom-made boots. She was seen in USS's medical department and provided information from her doctor that she had a square shaped fifth metatarsal and could not wear over-the-counter metatarsal boots. Redenbaugh made a request for custom-made boots, and USS's safety department noted that custom-made boots would need to meet ANSI standards for foot protection. (ECF No. 26, pp. 4-5; ECF No. 29, pp. 2, 8; ECF No. 31, p. 2). Efforts were made by USS to locate metatarsal boots for Redenbaugh and return her to work. USS has represented that this was the first time it sought to source custom-made boots for an employee. Redenbaugh was given permission to purchase custom-made ANSI certified boots. A shoemaker identified by Redenbaugh thought he could produce boots but he was unable to have them ANSI certified. USS was unable find a manufacturer able to make custom-made ANSI-certified metatarsal boots that would fit Redenbaugh. (ECF No. 26, pp. 5-6; ECF No. 29, pp. 4, 9; ECF No. 31, p. 4).

Most of the positions in the Plant require employees to wear ANSI-certified metatarsal boots. Unbeknownst to Redenbaugh, USS considered alternate vacant jobs for her after learning it could not obtain custom-made ANSI-certified metatarsal boots. It determined that she lacked the qualifications for the open accounting position and the open clerical position required wearing metatarsal boots while in the Plant. Redenbaugh was unaware that USS advised her union that it would consider reassignment if a vacancy arose for which she was qualified that did not require metatarsal boots. Redenbaugh never requested a transfer to another position at the Plant. (ECF No. 26, p. 8; ECF No. 29, p. 11).

Redenbaugh resigned in January 2023 as part of a workers' compensation settlement. Prior to that, in August 2020, she applied for Social Security Disability Insurance ("SSDI") benefits stating that she was unable to work in any position at USS as of August 2020. Redenbaugh's

health began declining and as of September 2021, she was unable to work in any job.  (ECF No. 26, pp. 8-9; ECF No. 29, pp. 6, 12; ECF No. 31, p. 5).

## II.   STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The Court must view the evidence presented in the light most favorable to the nonmoving party.  *Id.* at 255.  It refrains from making credibility determinations or weighing the evidence.  *Id.*  "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment.  *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

## III.   ANALYSIS

The ADA prohibits employers from discriminating against any "qualified individual on the basis of disability."  42 U.S.C. § 12112.  To establish a prima facie case, a plaintiff must prove that she:  (1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential functions of the job at issue, with or without reasonable accommodations; and (3) has "suffered an otherwise adverse employment decision as a result of discrimination."  *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citation omitted).  USS contends that Redenbaugh has failed to establish her prima facie case as a matter of law because she does not fall within the ADA's protected class.  While not conceding that Redenbaugh had a disability within the meaning of the ADA, USS argues that Redenbaugh was not a qualified individual.  USS

4

contends that the requirement for Chemical Analysts to wear ANSI-certified metatarsal boots is essential to the safe performance of work, and that Redenbaugh's inability to wear compliant footwear rendered her unable to perform the essential functions of her job.

By definition, a qualified individual under the ADA is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).   The burden is on a plaintiff to show that she is a qualified individual. *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d Cir. 2002).   In order to determine whether someone is a qualified individual, the Equal Employment Opportunity Commission ("EEOC") regulations divide the inquiry into two parts: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." *Supinski v. United Parcel Service, Inc.*, 413 F. App'x 536, 539-40 (3d Cir. 2011); *see also* 29 C.F.R. § 1630.2(n).

It is undisputed that Redenbaugh possessed the necessary skill, experience, and education to perform the job of Chemical Analyst.  At issue is her ability to perform the essential functions of the Chemical Analyst position with or without a reasonable accommodation.

A job function may be considered essential for a variety of reasons.   29 C.F.R. § 1630.2(n)(2).  The ADA dictates what evidence relating to whether a particular job function is essential may include, but is not limited to:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). "[W]hether a particular function is essential 'is a factual determination that must be made on a case by case basis [based upon] all relevant evidence.'" *Deane v. Pocono Medical Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998) (citation omitted). While the plaintiff carries the burden to show that she is a qualified individual, "the employer has the burden of showing a particular job function is an essential function of the job." *Supinski*, 413 F. App'x 536, 540 (3d Cir. 2011) (citation and internal quotation marks omitted).

No genuine issue of material fact exists as to the essential functions of the Chemical Analyst position. The parties agree that Chemical Analysts are exposed to "potentially dangerous chemicals, open flames, glass instruments, heavy chemical containers, as well as moving locomotives and potentially deadly hazards" while on the job. (ECF No. 29, p. 7). The parties further agree that Redenbaugh's responsibilities included collecting samples at the Plant's mill, working with hazardous chemicals, and carrying objects that weighed up to fifty pounds. She also cleaned glass instruments, entered the hazardous waste shed, moved five-gallon containers, and moved twenty to twenty-five pound tar collection buckets. (ECF No. 26, pp. 3-4; ECF No. 29, pp. 6-7).

Additionally, the parties do not dispute that in 2014, USS mandated that workers wear ANSI-certified metatarsal boots because they are the recommended standard for protective footwear to minimize safety risks by the Occupational Safety and Health Administration. It is further undisputed that USS revised its safety procedures for lab employees and required them to wear compliant metatarsal boots while working in the laboratory as well as onsite at the Plant.[3]

---

[3] Notably, 29 C.F.R. § 1910.136(a) mandates that an employer "shall ensure that each affected employee uses protective footwear when working in areas where there is a danger of foot injuries due to falling or rolling objects, or objects piercing the sole," and goes on to list consensus standards for footwear.

(ECF No. 26, p. 3; ECF No. 29, p. 6).  USS provides its employees with footwear manufactured by third parties that is ANSI-certified by the manufacturer.  (ECF No. 26, p. 6; ECF No. 29, p. 10). It is undisputed that Redenbaugh started wearing ANSI-certified metatarsal boots when USS altered its safety policy in 2014, and that she did so until she went off work in August 2020 due to a foot injury.[4]

Redenbaugh attempts to manufacture a factual dispute by claiming that the essential functions for USS Chemical Analysts only require "metatarsal boots," not ANSI-certified metatarsal boots, but she has admitted that "[s]ince 2014, USS has mandated that workers wear ANSI-certified metatarsal boots because they are the recommended standard for protective footwear to minimize safety risks by the Occupational Health and Safety Administration."  (ECF No. 26, p. 3; ECF No. 29, p. 6).  She also previously conceded in the following portion of an email to USS personnel on May 16, 2021, that she knew of USS's ANSI-certified metatarsal boot requirement:

> When you called me back you just told me that I have to get ANSI certification on the shoes or there is nothing we can do. Glenn started to tell me I did not understand that there is lots of equip[ment] involved to test these shoes. I replied by stating that I do understand what it involves since I have been researching it on my own since I found out that they need to be certified. Also, I have been researching and trying to find solutions about these shoes on my own for years. I already know that OSHA requires this cert. As he also stated. I am not suggesting that we waive the ansi cert.

---

[4] It does not matter that Redenbaugh successfully performed her job prior to 2014 without injury while not wearing ANSI-certified footwear.  She wore compliant footwear from 2014 until 2020 when she went on leave.  Her argument that the requirement of ANSI-certified footwear for Chemical Analysts is discriminatory and/or unrelated to her job's essential functions rings hollow. The ADA does not limit an employer's ability to establish or change the content, nature, or functions of a job, and it does not mandate that a safety requirement be part of the essential functions of a position for an employer to enforce it. *Holmes v. Gen. Dynamics Mission Sys., Inc.*, 835 F. App'x 688, 691 (4th Cir. 2020).

(ECF No. 26, p. 6; ECF No. 29, p. 9); (ECF No. 27-2, p. 45; ECF No. 30-1, p. 87, 91-92).

Furthermore, Redenbaugh conceded during her deposition that,

> Q.   And I think you agreed with me earlier that people who are out in the plant absolutely have to wear ANSI-certified metatarsals?
> A.   Yes […].
>
> *       *       *
>
> Q.   At a certain point you'd agree with me that the rule changed, and everyone in the lab had to wear certified metatarsals?
> A.   Yes.  And believing in safety, I think that wearing equipment that injures you is unsafe and wrong.

(ECF No. 30-1, pp. 116-17).  This is all to say that ample evidentiary support exists in the record

that ANSI-certified metatarsal boots were required of all employees after 2014, and Redenbaugh

knew of this requirement.  She actually wore compliant boots from 2014 to 2020.  Contrary to

Redenbaugh's argument otherwise, no genuine issue of material fact exists that an essential

function of the Chemical Analyst position was the wearing of ANSI-certified metatarsal boots.

Redenbaugh maintains that she would have been qualified to perform her job as a Chemical

Analyst with reasonable accommodations.[5]    Thus, she "must demonstrate what reasonable

---

[5] When a plaintiff makes sworn statements that squarely concede her lack of qualifications, she faces a higher burden to make out a prima facie case and survive summary judgment: she must offer an explanation for the apparent contradiction.  *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 797 (1999); *see also id.* at 807 ("[T]he court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim.")  A plaintiff's prior sworn assertion in an application for SSDI benefits that she is, for example, "'unable to work' will appear to negate an essential element" of her ADA case.  *See id.* at 806.  When presented with such a situation, the first question that a court must ask is whether the representations advanced by that plaintiff in her SSDI application and her ADA claim genuinely conflict.  *See Detz v. Greiner Inds., Inc.*, 346 F.3d 109, 118 (3d Cir. 2003).  If a court finds that the representations are "patently inconsistent," it proceeds to the second question under *Cleveland*: whether the plaintiff has adequately reconciled the two positions.  *Id.* at 120.

In August 2020, Redenbaugh applied for SSDI benefits stating that she was unable to work in any position at USS.  In pleading her prima facie case under the ADA, Redenbaugh asserts that she was a qualified individual.  In other words, she claims that she could perform the essential function of her job, at least with reasonable accommodation.  These positions are patently inconsistent.  Redenbaugh is correct that the ADA considers whether a person might be able to perform their job with reasonable accommodations, while that possibility is ignored when

accommodations [she] contends the employer should have made," which begins with "at least a facial showing that such accommodation is possible." *See Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir. 1996). The accommodation Redenbaugh sought was custom-made ANSI-certified footwear,[6] but USS has come forth with uncontradicted evidence that her sought-after accommodation was not possible as a manufacturer could not be found to make her custom-made ANSI-certified metatarsal boots.[7] (ECF No. 26, pp. 6-7; ECF No. 29, pp. 9-10). Thus,

---

determining disability for SSDI purposes. She must still proffer a sufficient explanation for the apparent contradiction between her two claims—"simply averring that the statutory schemes differ is not enough to survive summary judgment in light of *Cleveland*." *Motley v. N.J. State Police*, 196 F.3d 160, 166 (3d Cir. 1999).

     Redenbaugh states that she "applied for SSDI after her August 2020 surgeries," and she "was in effect stating that she was unable to work without a reasonable accommodation, which is still consistent with the current ADA action." (ECF No. 28, pp. 11-12). According to Redenbaugh, "[h]ad [she] been given the custom-made, ANSI-certified metatarsal boots, job restructuring to let her wear other shoes, or a reassignment, a reasonable jury could find that [she] could have performed the essential functions of her position, despite her application for SSD[I]." (*Id.* at 12). The Court believes that Redenbaugh has reconciled her two contradictory positions. It is not convinced that judicial estoppel applies and that summary judgment is warranted on the basis of judicial estoppel, but it matters not as Redenbaugh is unable to establish her prima facie case – she was unable to perform the essential functions of her position.

[6] To the extent Redenbaugh now argues that USS should have reassigned her to another job, the record reveals that other potential positions within the Plant were limited due to the metatarsal boot requirement. Redenbaugh failed to demonstrate that she was capable of performing, with or without reasonable accommodations, other positions at the Plant, and that they were at an equivalent level as her Chemical Analyst position. In fact, she never requested a transfer or identified an alternative vacant job. USS considered the vacant jobs available at the time but it determined Redenbaugh was not qualified for an accounting role, and that she was not qualified for a clerical position as it required wearing metatarsal boots while in the Plant. USS advised Redenbaugh's union that it would consider reassignment if a vacancy arose for which she was qualified that did not require metatarsal boots. (ECF No. 26, p. 8; ECF No. 29, 11-12). An employer is not required "to create a new position in order to accommodate an employee with a disability, or transform a temporary light duty position into a permanent position." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 614 (3d Cir. 2006).

[7] "To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor v.*

Redenbaugh failed to make her facial showing that her requested accommodation of custom-made footwear was possible.

As Plaintiff was unable to comply with the valid ANSI-certified metatarsal boot safety requirement, she could not perform the essential functions of her job as a Chemical Analyst. She is not a qualified individual for ADA purposes. *See e.g., Holmes* (holding termination of diabetic who could not meet safety requirement of working in steel-toed shoes did not violate ADA); *see also EEOC, Applying Performance and Conduct Standards to Employees with Disabilities*, 2008

---

*Phoenixville Sch. Dist.*, 184 F.3d 296, 319–20 (3d Cir. 1999) (citations omitted). The United States Court of Appeals for the Third Circuit has held that "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith" and must engage in an "interactive process." *Id.* at 312 (quoting *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997)). The interactive process does not dictate that any particular concession must be made by the employer; nor does the process remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions. *See Walton v. Mental Health Ass'n of Se. Pennsylvania*, 168 F.3d 661, 670 (3d Cir. 1999). All the interactive process requires is that employers make a good-faith effort to seek accommodations. An employer acts in good faith when it takes steps like "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered the employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." *Taylor*, 184 F.3d at 317. By contrast, an employer acts in bad faith when it "obstructs or delays the interactive process," otherwise fails to "help the other party determine what specific accommodations are necessary," or "fails to communicate by way of initiation or response." *Id.* at 312 (quotation marks omitted).

The record reflects that USS spoke with Redenbaugh and her union representatives about her specific requested accommodation–custom-made ANSI-certified metatarsal boots–and endeavored to find a manufacturer for such footwear. No reasonable juror could conclude USS failed to engage Redenbaugh (and her union representatives) with a good-faith effort to assist in seeking her accommodation. Any argument to the contrary is fatally undermined by the record. Redenbaugh has failed to adduce evidence that USS did not take the interactive process seriously. How that process played out is somewhat irrelevant as the fact of the matter is that her requested accommodation of custom-made ANSI-certified metatarsal boots was impossible due to the lack of a manufacturer. *Mengine*, 114 F.3d at 420 ("The ADA, as far as we are aware, is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made." (citation omitted)). Despite Redenbaugh's efforts to manufacture a dispute (*e.g.*, by now claiming in this litigation that she was not considered for other vacant positions at the Plant), no genuine issue of material fact exists as to whether USS engaged in the interactive process.

WL 4786697, at ¶ 23 (Sept. 25, 2008) (being unable to comply with a dress requirement that is "job-related and consistent with business necessity" renders person not qualified, giving example of wearing steel-toed boots).  The Court holds that Redenbaugh's ADA claim fails as a matter of law on the second element of the prima facie case.

### IV.   CONCLUSION

For these reasons, the Court will grant USS's motion and enter judgment in its favor. Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

___10/7/24_____
Dated

11